## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

SKYWAY TOWERS LLC, a Delaware
limited liability company,
and CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS,

                Plaintiffs,

v.

                             Case No. 2:25-cv-11939

BEAVER CREEK TOWNSHIP,
MICHIGAN, the PLANNING               Honorable
COMMISSION for Beaver Creek
Township, and BRENT VANKUIKEN,
CHRIS BOWMAN, STEVE NELSON,
SCOTT PESTI, and ROB FITZPATRICK
in their individual capacities as Members of
the Planning Commission,

                Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED TREATMENT

Plaintiffs Skyway Towers LLC ("Skyway") and Cellco Partnership d/b/a Verizon Wireless ("Verizon") (collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby file this Complaint for declaratory and injunctive relief and expedited treatment against Defendants Beaver Creek Township, Michigan ("Beaver Creek"), the Planning Commission for Beaver Creek Township (the "Planning Commission"), and Brent Vankuiken, Chris Bowman, Steve Nelson, Scott Pesti, and Rob Fitzpatrick in their official capacities as Members of the

Planning Commission (all Defendants collectively, the "Township"), alleging as follows:

## I.    NATURE OF THE ACTION

1.     This action arises out of the Township's unlawful denial of Skyway's application for a Special Use Permit ("SUP") to construct a wireless communications tower (the "Proposed Tower") in Roscommon, Michigan.[1]

2.     The Township did not support its denial of the SUP application with substantial evidence contained in a written record—nor can it provide substantial evidence for the denial based on Skyway's application—and the denial effectively prohibits the provision of wireless services in the vicinity of the Proposed Tower.

3.     The Township's denial of Skyway's SUP application violates the federal Communications Act, as amended, 47 U.S.C. § 332(c)(7) (the "Communications Act"), and Skyway is entitled to an order directing the Township to grant Skyway's SUP application for the Proposed Tower.

4.     Plaintiffs request expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

---

[1] Despite the subject property's address in Roscommon, it lies in Crawford County, Michigan, within the confines of the Beaver Creek Township, and is thus subject to the zoning authority of the Planning Commission and the jurisdiction of this Court.

## II.  PARTIES

5.      Plaintiff Skyway is a Delaware limited liability company authorized to transact business in Michigan.  Skyway constructs, owns, and manages wireless telecommunications facilities that are used by national and regional wireless carriers to provide personal wireless services to end-user consumers in Michigan and throughout the country.

6.      Plaintiff Verizon is a wireless network operator headquartered in Basking Ridge, New Jersey and is authorized to transact business in Michigan. Verizon is the largest wireless carrier in the United States and operates national wireless networks covering parts of every US state, including Michigan.

7.      Defendant Beaver Creek is a civil township in Crawford County, Michigan and is subject to the jurisdiction of this Court.  Beaver Creek occupies the southwest corner of Crawford County and is bordered by Kalkaska County to the west and Roscommon County to the south.  Beaver Creek borders the northern coast of Higgins Lake and includes Higgins Lake State Park.

8.      Defendant Planning Commission is an entity of the Beaver Creek government and is subject to the jurisdiction of this Court.   The Planning Commission makes planning and development decisions for the Township, including review and determination of SUP applications for wireless communications facilities to ensure compliance with local zoning ordinances.

3

9.     Upon information and belief, Brent Vankuiken, Chris Bowman, Steve Nelson, Scott Pesti, and Rob Fitzpatrick are residents and domiciliaries of the Eastern District of Michigan and are subject to the jurisdiction of this Court. These named individuals served as Members of the Planning Commission that denied Skyway's SUP application at issue in this litigation. Each individual is named solely in their official capacity as a Member of the Planning Commission.

III.    **JURISDICTION AND VENUE**

10.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 47 U.S.C. § 332(c)(7) because of the existence of federal questions arising under the Communications Act. The Court has authority to issue declaratory judgment relief pursuant to 28 U.S.C. § 2201(a).

11.    Plaintiffs have standing pursuant to 47 U.S.C. § 332(c)(7)(B)(v) as persons adversely affected by Defendants' final actions that are inconsistent with 47 U.S.C. § 332(c)(7)(B)(i)(II) and (iii).

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 90(a)(2) because Defendants reside in this judicial district, the Proposed Tower would be located in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## IV.   STATEMENT OF FACTS

### A.   Federal Statutory Control of Wireless Siting

13.   The Communications Act governs federal, state, and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case.  47 U.S.C. § 332(c)(7)(B).

14.   The Communications Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Communications Act may seek review in the federal courts, and that the courts shall hear and decide the action on an expedited basis.  47 U.S.C. § 332(c)(7)(B)(v).

15.   Skyway constructs, owns, and manages wireless communications facilities in Michigan and elsewhere in the country.  Skyway leases space on its facilities to national and regional wireless carriers who provide personal and advanced wireless services, as well as other telecommunications services, as those terms are defined under federal law, to end-user wireless consumers.  In providing this valuable service to wireless carriers, Skyway is facilitating the development and deployment of advanced wireless and broadband connectivity consistent with the goals of the Communications Act.  Skyway often also leases space on its facilities to federal, state, and local first responders, law enforcement, and public safety agencies.

5

16.    Verizon provides commercial mobile radio services, personal and advanced wireless services, and other telecommunications services, as those terms are defined under federal law, in the State of Michigan, including in Beaver Creek.

17.    Verizon is seeking to facilitate the maintenance and development of a wireless telecommunications network in keeping with the goals of the Communications Act.  Verizon uses licenses issued by the Federal Communications Commission ("FCC") pursuant to 47 U.S.C. § 151 to provide wireless service in and around Beaver Creek.

18.    Section 151 of the Communications Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications."  47 U.S.C. §151.

19.    To meet these policy goals, Verizon seeks to provide myriad wireless services to local businesses, public safety entities, and the general public.

20.    Likewise, to advance the national policies enumerated under 47 U.S.C. § 151 and repeatedly reiterated by the FCC, Skyway constructs towers and other wireless facilities that allow wireless carriers, such as Verizon, to create and

maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals.

21.    To provide reliable service to a user, coverage from cell sites must overlap in a grid pattern resembling a honeycomb.  If Skyway is unable to construct a cell site within a specific geographic area, the wireless carriers it serves, such as Verizon, will not be able to provide service to the consumers within that area.

22.    To determine where a new wireless facility is required, radio frequency ("RF") engineers use various techniques, such as sophisticated computer programs and field testing, to complete a propagation study, which shows where cell sites need to be located in order to provide service.  The propagation study also considers the topography of the land, the coverage boundaries of neighboring cell sites, and other factors.  For a wireless network to perform, cell sites must be located, constructed and operated so that reliable service can be achieved.  If there is no functioning cell site within a given area, or if the cell sites around an area lack sufficient capacity to handle the amount of customer demand for limited wireless spectrum, there will be no reliable service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of dropped calls and call connection failures.

## B.    The Proposed Facility and Application Process

23.    Based upon research and analysis by its RF engineers, Verizon determined that it has a gap in its ability to provide reliable service in Beaver Creek, specifically on the north side of Higgins Lake (the "Gap Area").

24.    Service gaps can be caused by a lack of coverage, insufficient system capacity, or both.  Verizon identified service gaps through internal network monitoring tools and analysis showing the capacity and/or coverage needs of the Gap Area.

25.    Verizon's service gap in the Gap Area is significant and has existed for several years.  Verizon customers using their devices in and around the Gap Area are likely to experience diminished call quality, slow and unreliable data transmission speeds, call drops, and blocked calls.  The service gap must be remedied for Verizon to provide reliable personal wireless service to residents in the Gap Area and, by extension, to other areas north of Roscommon, and provide enhanced E911 services.

26.    Verizon identified a search ring around the Gap Area within which a wireless communications facility could be located or constructed to remedy Verizon's gap in service.

27.     Verizon first investigated whether there were any existing towers in the Gap Area that could be used to collocate equipment that would resolve the coverage gap and remedy Verizon's service need.

28.     There are no other existing towers in the search ring on which Verizon could collocate communications equipment to resolve the service gap or that could be reasonably altered to accommodate Verizon's equipment to achieve the coverage necessary to remedy Verizon's service gap.

29.     Verizon then provided Skyway with the search ring and requested that Skyway look for available properties within the search ring that would be suitable for construction of a new wireless transmission tower to remedy Verizon's significant gap in service.

30.     Plaintiffs worked together to identify properties in the Gap Area that could accommodate a wireless communications tower sufficient to correct the significant service gap in Verizon's wireless communications network.

31.     One such property identified by Plaintiffs is located on Parcel 050-031-010-060-00 near 5841 W Dort Road, Roscommon, Michigan 48653 (the "Property").

32.     Plaintiffs investigated the feasibility of over twenty other potential sites within the search ring, eliminating some sites that were not large enough to support construction of a wireless communications tower.  Plaintiffs then mailed inquiry

letters to approximately fifteen property owners in the search ring with proposed lease terms. No property owners expressed interest in leasing a portion of their property to Plaintiffs other than the owners of the subject Property.

33. The Property is owned by Glen and Tara Baese. The Baeses have consented to Skyway entering the property to perform the work related to construction of the Proposed Tower and filing any documents related to that work. The Baeses and Skyway entered into a lease agreement for the Property whereby Skyway will lease a 70 x 70-foot area of the Property for construction of the Proposed Tower. The lease includes easements for access and utility maintenance and grants Skyway the authority to seek any regulatory or land use approvals necessary for permitting, construction, and maintenance of the Proposed Tower.

34. The Property is currently zoned Low Density Residential under Beaver Creek's Master Plan, which permits wireless communications facilities like the Proposed Tower as a Special Use in accordance with the Beaver Creek Township Zoning Ordinance (the "Zoning Ordinance").

35. Section 7.13 of the Zoning Ordinance[2] regulates the placement, construction, and modification of wireless communications facilities in order to protect the health, safety, and welfare of the public, while at the same time not

---

[2] Unless otherwise noted, references to the "Zoning Ordinance" in this Complaint refer to Section 7.13.

unreasonably interfering with the development of the competitive wireless telecommunications marketplace in Beaver Creek Township, Michigan.

36.    Under the Zoning Ordinance, the Planning Commission may authorize construction of new wireless communications towers, like the Proposed Tower using the procedures listed in Section 7.13(C).

37.    Skyway determined that it was required to obtain an SUP for the Proposed Tower.  An application for an SUP must include all information required by Section 7.13(D)(2) and (3).

38.    Section 7.13(E) of the Zoning Ordinance outlines the standards with which newly constructed wireless towers must comply, unless a waiver is obtained pursuant to Section 7.13(F).

### C.    Skyway's First SUP Application

39.    On July 23, 2024, Skyway submitted an SUP application to install a 240-foot wireless tower on the Property.  In support of its application, Skyway submitted all of the materials required by the Zoning Ordinance.

40.    Skyway's July 23, 2024 application requested a waiver from two of the Standards for Transmission Towers and Antennas ("Standards") set forth in subsection E of the Zoning Ordinance.

41.    First, Skyway requested a waiver of the Noise Reduction Standard (the "Noise Standard").  The Zoning Ordinance, in subsection E.6, sets the Noise

Standard to forty-five (45) decibels as measured at the property line, but Skyway's application noted an anticipated noise level of "about 46.1" decibels at the property line. Skyway requested a waiver of the Noise Standard to allow for a slight increase in sound level from a generator that would be located on the Property to serve the Proposed Tower to ensure continued service coverage in the event of a commercial power outage. Recognizing that the generator may slightly exceed the Noise Standard on the occasion of a commercial power outage, Skyway's SUP application promised to "work with the Township to effectively regulate noise" or "take additional sound buffering measures." Skyway also noted that "existing vegetation would likely reduce the sound pressure to meet the limits required."

42.    Second, Skyway requested a waiver of the Setback Standard from the east, south, and west property lines.

43.    The Setback Standard, established in subsection E.4. of the Zoning Ordinance states: "Unless a waiver is granted pursuant to subsection F, in all zoning districts, the transmission tower shall be setback at least a minimum distance equal to the height of the tower from all property and right-of-way lines."

44.    Subsection F.3. of the Zoning Ordinance establishes the standard for a waiver from the Setback Standard, stating: "The Planning Commission may grant a waiver to the setback of subsection E.4. upon finding that stealth design, proposed

12

landscaping, configuration of the site, or the presence of mature trees obviates the need for compliance."

45.     Skyway said a waiver was warranted for the property line to the east based on the configuration of the site because the property directly east is also owned by Baeses (who agreed to the Proposed Tower).  Indeed, although the property to the east is a separate parcel from the subject Property, the Baeses use the two parcels as one coherent property.

46.     Skyway explained that a waiver was warranted for the property lines to the south and west because of the existing rows of mature trees that provided natural screening from adjacent properties.

47.     Skyway also noted that there were a limited number of potential sites in the search ring that would meet the Setback Standard, and that Skyway had received no interest from any other property owners with parcels sufficient to meet the Setback Standard for the Proposed Tower.

**D.     The Planning Commission Denies Skyway's First SUP Application**

48.     On September 16, 2024, the Planning Commission held a public hearing at the Township Offices in Grayling, Michigan to consider and vote on Skyway's SUP application.  Planning Commission Members Brent Vankuiken and

Chris Bowman participated in the hearing, which was also attended by Chair James Kendall and Secretary Sandy Beaudet.[3]

49.    The Planning Commission took public comment from a representative for Skyway and neighbors of the Property.  After the public comment period, the Planning Commission closed the public discussion to discuss the SUP application among the Planning Commission members.  After discussion among its members, the Planning Commission unanimously voted to deny Skyway's SUP application.

50.    After the September 16, 2024, public hearing, the Planning Commission posted meeting minutes to its website.  The meeting minutes referenced opposition to the SUP application from neighbors of the Property: "Neighbors of the property in question . . . stood up and made their claims that none of them want this tower in their backyards which it essentially would be."  The meeting minutes also indicated that Skyway had requested two waivers from the Zoning Ordinance regarding the noise level and setback standards, but did not indicate why the Planning Commission refused to grant these waivers, and did not mention the waiver consideration standards established in subsection F of the Zoning Ordinance.

---

[3] Kendall and Beaudet are not named Defendants in this lawsuit.  Upon information and belief, current members Nelson, Pesti, and Fitzpatrick were not members of the Planning Commission in September 2024 or were not present for this vote.

**E.    Skyway's Revised SUP Application**

51.    After the denial of its July 23, 2024, SUP application, Skyway went back to the drawing board and revised its plan for the Proposed Tower.

52.    On March 13, 2025, Skyway submitted a new Request for Special Use Permit the ("Revised SUP Application").  This time, Skyway proposed a shorter Proposed Tower of only 155 feet.  Skyway eliminated the need for a Noise Standard waiver and only requested a waiver of the Setback Standard.

53.    First, Skyway eliminated the need for the Noise Standard waiver by identifying a different generator it could use for the shorter Proposed Tower with a baseline noise level of approximately thirty-eight (38) decibels at the property line, below the maximum limit of forty-five (45) decibels prescribed by the Zoning Ordinance.  The use of the new generator at the Proposed Tower reduced expected noise levels by about eight (8) decibels in the Revised SUP Application.

54.    Second, Skyway's lower Proposed Tower height in the Revised SUP Application brought the project in compliance with the Setback Standards for the north, west, and south property lines.  Thus, the Revised SUP Application only required a waiver from the Setback Standard for the east property line.[4]  The Revised

---

[4] Although it was no longer necessary given the lower height of the Proposed Tower, the Revised SUP Application maintained language demonstrating that a waiver of the Setback Standard for the south and west property lines would be appropriate under the Zoning Ordinance because of the presence of mature trees that provide natural screening to adjacent property owners.

SUP Application reminded the Planning Commission that the waiver from the east property line was justified based on the configuration of the site. Specifically, the Baeses own both the subject Property and the parcel directly east of the Proposed Tower and have agreed to allow Skyway to build the Proposed Tower on this portion of the Property even though it would be 54 feet from their adjacent parcel. Skyway's Revised SUP Application noted that the Proposed Tower would be "+/- 266 feet" from the nearest parcel to the east not owned by the Baeses and thus would meet the Setback Standard for the closest neighbor to the east. Mature trees and woods also exist along the property line with the nearest parcel to the east not owned by the Baeses.

55. The Revised SUP Application presented evidence of the need for construction of a new wireless communication facility to fill a gap in Verizon's service, including propagation studies and a written Statement of Network Need from Verizon's RF engineer, an experienced technical expert with particular focus on the Michigan/Indiana/Kentucky market, which includes the area around Higgins Lake.

56. The Revised SUP Application also presented evidence that there are no existing facilities in the vicinity of the Proposed Tower upon which Verizon could collocate to remedy its gap in service. The Revised SUP Application included both the propagation studies and RF engineer's Statement of Network Need, as well as a

16

Map of Existing Facilities in Beaver Creek Township demonstrating that the nearest existing facility is located approximately 3.2 miles away.

57.     Skyway documented its outreach in the Revised SUP Application to all property owners for viable parcels in the search ring to gauge interest in leasing portions of their property.  The Revised SUP application noted that there were limited parcels that would meet the Setback Standard in the search ring and that Skyway did not receive interest from any other property owners other than the Baeses.  The Revised SUP Application highlighted the fact that Property required minimal tree clearing as compared to other potential parcels that would have needed significant clearing to install access roads for the Proposed Tower.

58.     Skyway's Revised SUP Application did not request any other waivers other than a waiver of the Setback Standard and the Revised SUP Application otherwise met all of the requirements of the Zoning Ordinance.

## F.    The Planning Commission Denies the Revised SUP Application

59.     On May 28, 2025, the Planning Commission held a public hearing at 6:00 PM to consider Skyway's Revised SUP Application. All members of the Planning Commission were present for the hearing.[5]

---

[5] On information and belief, Chair James Kendall and Secretary Sandy Beaudet are no longer members of the Planning Commission and were not present at this meeting in an official capacity.

60.     The Planning Commission allowed Plaintiffs' representatives to speak to the public regarding the Proposed Tower and then allowed for a period of public comment.

61.     Plaintiffs' representatives spoke for several minutes on two separate occasions prior to the public comment period.  The representatives presented to the Planning Commission and the members of the public that were in attendance about the ways in which the federal Communications Act impacts the Zoning Ordinance. Specifically, Plaintiffs' representatives explained that the federal Communications Act requires that a denial of an SUP application must be supported by substantial evidence contained in a written record and cannot have the effect of creating an effective prohibition of the provision of personal wireless services in the area.

62.     Plaintiffs' representatives also highlighted materials and information in the Revised SUP Application.   Specifically, the representatives showed the propagation studies and existing coverage maps demonstrating Verizon's existing significant gap in service and the map of existing wireless facilities showing that there are no feasible sites for collocation.  The representatives also provided detail regarding the decision to lease the Property for the Proposed Tower, including Plaintiffs' inquiries to other property owners in the search ring and the lack of interest in response, other than from the Baeses.

63.     The Planning Commission closed the hearing at 6:26 PM.  All of the Planning Commission members voted to deny Skyway's Revised SUP Application and the meeting adjourned at 6:35 PM.

64.     The Planning Commission posted meeting minutes to its website after the public hearing.  The meeting minutes noted that "[a]ll public comment was in opposition of tower placement."  The minutes also stated that the "[h]omeowner where tower is proposed to be placed is opposed to combining their two parcels together to avoid requesting a variance.  Tower company was asking for a 101' variance, plus or minus."

65.     Skyway did not request a "variance" from the Zoning Ordinance. Rather, as provided for in subsection E.4., Skyway's Revised SUP Application requested a waiver of the Setback Standard based on the waiver standards set forth in subsection F.3.

66.     The meeting minutes did not adequately explain the Planning Commission's decision to deny Skyway's Revised SUP Application, only stating in a conclusory manner that the public was in opposition to the Proposed Tower.

67.     The meeting minutes do not explain why the Planning Commission did not find pursuant to the Zoning Ordinance in subsection F that "stealth design, proposed landscaping, configuration of the site, or the presence of mature trees" obviated the need for the Proposed Tower's compliance with the Setback Standard.

19

68.    The meeting minutes only reference that Plaintiffs' representatives "spoke to the public in regard to the tower" at the public hearing but do not reference or detail the substantial evidence presented by Plaintiffs regarding the interplay between federal law and the Zoning Ordinance, Verizon's significant gap in coverage, and the lack of available alternative locations for the Proposed Tower.

69.    Although the meeting minutes summarily describe the public as being in opposition, the minutes do not describe or cite any substantial evidence in the record relating to this opposition.

70.    The written record consists of Skyway's Revised SUP Application and related submissions to the Township and the meeting minutes from the May 28, 2025 hearing.  There is no written record of opposition to the Revised SUP Application from either the public or Defendants, other than the general mention of opposition in the meeting minutes.

71.    The Planning Commission's denial effectively prohibits Verizon from providing personal wireless services to individuals who live, work, commute, vacation, and otherwise travel through the Gap Area surrounding the Proposed Tower.

72.    Plaintiffs have exhausted the administrative process and have no further right to appeal or reconsideration of the Planning Commission's denial of the Revised SUP Application because, pursuant to Section 8.05(B), the Zoning Board

of Appeals does not have jurisdiction to hear appeals of Planning Commission's decisions concerning Special Uses.

73.    Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.  The court shall hear and decide such action on an expedited basis."

74.    This action is timely filed because it was filed within thirty days after the issuance of the Planning Commission's May 28, 2025 vote to deny Skyway's Revised SUP Application – the Township's final action as reflected in the written denial found in the May 28, 2025 meeting minutes.

## COUNT I
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – Lack of Substantial Evidence)

75.    Plaintiffs incorporate by reference and reallege the foregoing factual allegations in Paragraphs 1 through 74 as if fully set forth herein.

76.    Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a . . . local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be . . . supported by substantial evidence contained in a written record."

21

77.    The Sixth Circuit has emphasized that "[t]here must be evidence. And not just any evidence - evidence that is substantial. And substantial evidence must be substantiated by something." *T-Mobile Cent., LLC v. Charter Township of W. Bloomfield*, 691 F.3d 794, 801 (6th Cir. 2012); *see also PI Tower Dev., LLC v. Charter Township of Chesterfield*, 574 F. Supp. 3d 480, 494 (E.D. Mich. 2021). "[G]eneralized objections" and allegations that a tower "would be bad for the community, would not be aesthetically pleasing, or would be otherwise objectionable" are "not enough." *T-Mobile v. W. Bloomfield*, 691 F.3d at 801; *see also New Par v. City of Saginaw,* 301 F.3d 390, 399 n.4 (6th Cir. 2002) ("General concerns from a few residents that the tower would be ugly or that a resident would not want it in his backyard are not sufficient.") (citations omitted).

78.    Skyway presented the Planning Commission with comprehensive and uncontroverted evidence in the Revised SUP Application and in testimony at the public hearing that the Proposed Tower complies with the Zoning Ordinance's requirements for approval of an SUP, including the Zoning Ordinance's standard for a waiver from the Setback Standard.

79.    The Township's denial of the Revised SUP Application was not supported by substantial evidence in the record.

80.     The meeting minutes from the May 28 public hearing demonstrate that the Planning Commission did not make any findings required by the Zoning Ordinance that would justify denial of the Revised SUP Application.

81.     The Planning Commission made no findings addressing the criteria for considering a waiver of the Setback Standards as set forth in the Zoning Ordinance subsection F.4.

82.     On the other hand, Skyway submitted substantial evidence in support of granting a waiver.

83.     The Planning Commission's denial and the meeting minutes memorializing that decision do not mention the evidence presented by Skyway.

84.     No evidence in the record supports a denial of Skyway's Revised SUP Application.

85.     The Township is bound by this written record and the justification, or lack thereof, in denying Skyway's Revised SUP Application.  *T-Mobile Cent., LLC v. City of Fraser*, 675 F. Supp. 2d 721, 738 (E.D. Mich. 2009) ("In the absence of a correlation between the Board's stated reasons and some provision of the ordinance which it invokes as grounds for its action, a finding of substantial evidence is not warranted.").

86.     Residents in opposition to the Proposed Tower did not submit evidence or provide testimony disputing the evidence submitted by Skyway that the Proposed

Tower satisfies the standards for an SUP, including the setback waiver. Rather, the objectors only lodged general opposition to Skyway constructing a wireless tower proximate to their properties.

87. The meeting minutes from the May 28, 2025 public hearing state there is general public opposition to placement of the Proposed Tower in their backyard, but general opposition is not substantial evidence recognized by the Sixth Circuit. *See New Par,* 301 F.3d at 399 n.4.

88. Generalized public opposition is also not substantial evidence under 47 U.S.C. § 332(c)(7)(B)(iii) and nothing in the Zoning Ordinance allows for a denial based on public opposition.

89. Beaver Creek's decision to deny Skyway's Revised SUP Application is not supported by substantial evidence in the written record, and violates, and is preempted by, Section 332(c)(7)(B)(iii) of the Communications Act and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order commanding the Defendants to approve Skyway's SUP application. *Wireless Income Props. v. McDonald*, 403 F.3d 392, 399 (6th Cir. 2005) (proper remedy for violation of Communications Act's substantial evidence requirement is not remand to the local zoning authority but injunctive relief compelling defendants to issue the requested permit).

<u>COUNT II</u>

**(Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) – Effective Prohibition of Personal Wireless Services)**

90.    Plaintiffs incorporate by reference and reallege the foregoing factual allegations in Paragraphs 1 through 89 as if fully set forth herein.

91.    Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any . . . local government thereof . . . shall not have the effect of prohibiting the provision of personal wireless services."

92.    Sixth Circuit precedent outlines the two-part test for evaluating an effective prohibition under the Communications Act: (1) a "showing of a 'significant gap' in service coverage" and (2) "some inquiry into the feasibility of alternative facilities or site locations." *T-Mobile v. W. Bloomfield*, 691 F.3d at 806 (adopting two-part test set forth by the 9th Circuit in *MetroPCS, Inc. v. City and Cnty. Of San Francisco,* 400 F.3d 715, 723-24 (9th Cir. 2005), and adopted by the majority of other circuits).

93.    Verizon has a significant gap in its ability to provide personal wireless service in the Gap Area, as demonstrated through RF propagation modeling, RF engineer's Statement of Need, and other data contained in Skyway's Revised SUP Application and orally presented to the Planning Commission at the May 28, 2025 hearing by Plaintiffs' representatives.

25

94.     Plaintiffs undertook a good faith and thorough investigation of potential alternative facilities or site locations in and around the Gap Area.

95.     The Revised SUP Application, and Plaintiffs' presentation at the Planning Commission's May 28, 2025 hearing, includes substantial and uncontroverted evidence of Plaintiffs' investigation into feasible alternatives, undertaken before applying for construction of the Proposed Tower.

96.     Within the Gap Area, there are no existing structures of sufficient height or of a type or design on which a wireless facility could be installed to cure Verizon's significant gap in personal wireless service.

97.     There are not any technologically feasible, actually available, less intrusive alternatives to the Proposed Tower.

98.     Accordingly, Beaver Creek's denial of Skyway's application effectively prohibits the provision of personal wireless services, in violation of, and is preempted by, 47 U.S.C. § 332(c)(7)(B)(i)(II), and should be set aside and enjoined by the Court on that basis.

99.     Additionally, or in the alternative, the Township's denial of Skyway's Revised SUP Application materially inhibits the provision of wireless services.

100.    In *In the Matter of Acceleration of Broadband Deployment by Removing Barrier to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, 33 FCC Rcd. 9088, 2018 WL 4678555 (2018) (Sept. 27, 2018)

(the "*FCC 2018 Order*"), the FCC issued a declaratory ruling that definitively interpreted the "effective prohibition" language of Section 332(c)(7)(B)(i)(II). The FCC declared that "an effective prohibition [of service] occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service." *Id.* ¶ 37.

101.   The FCC made clear that a local government effectively prohibits the provision of wireless services if it inhibits or limits a wireless service provider "not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities." *Id.* The FCC also made clear that an effective prohibition includes inhibiting a provider from deploying the "performance characteristics" of its choosing. *Id.* n.86. The *FCC 2018 Order* also declared that local governments cannot deny an application for a wireless site based on the alleged existence of alternative locations.

102.   Plaintiffs submitted evidence, both in the Revised SUP Application and at the Planning Commission's May 28, 2025 public hearing, that the Proposed Tower is necessary for Verizon to provide coverage, network capacity, and ultimately provide service in the vicinity of the subject Property.

103.   The Township's denial of Skyway's Revised SUP Application materially inhibits or limits Plaintiffs' ability to install facilities and provide wireless service at the level Verizon determines appropriate.

104.    Accordingly, the Planning Commission's denial of Skyway's Revised SUP Application effectively prohibits the provision of personal wireless services, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

105.    This Court should exercise its power to issue an order commanding the Township to approve Skyway's Revised SUP Application and any related permits, as applicable.

**Prayer for Relief**

**WHEREFORE,** Plaintiffs demand judgment against the Defendants as follows:

1.    An expedited review of the matters set forth in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

2.    A judgment that the Defendants' Denial, actions, and decisions are not supported by substantial evidence in the written record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii);

3.    A judgment that the Defendants' Denial, actions, and decisions have the effect of prohibiting the provision of personal wireless service, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);

4.    A judgment that the Defendants' Denial, actions and decisions violate and are preempted by the Communications Act and are therefore void and invalid;

5.    An order requiring the Defendants to grant the Revised SUP Application, and thereby approve the Proposed Tower;

6.    An order directing the Defendants to issue all other approvals and permits necessary for the construction of the Proposed Tower;

7.    An award of Plaintiffs' costs, including reasonable attorneys' fees; and

8.    Such other and further relief as the Court may deem just and proper.

                        Respectfully submitted,

Dated June 27, 2025        By: */s/Richard R. Rassel, III*
                        Richard E. Rassel (P57540)
                        Jeremy M. Manson (P76920)
                        WILLIAMS, WILLIAMS, RATTNER
                         & PLUNKETT, P.C.
                        380 N. Old Woodward Ave., Suite 300
                        Birmingham, MI  48009
                        (248) 642-0333
                        rer@wwrplaw.com
                        jmm@wwrplaw.com

                        Daniel P. Reing
                        (Pro Hac Vice forthcoming)
                        Ryan T. Dougherty
                        (Pro Hac Vice forthcoming)
                        MINTZ, LEVIN, COHN, FERRIS,
                        GLOVSKYY AND POPEO, P.C.
                        555 12th Street NW, Suite 1100
                        Washington, DC 20004
                        (202) 434-7300
                        dpreing@mintz.com
                        rtdougherty@mintz.com
                        *Attorneys for Plaintiffs Skyway Towers LLC*
                        *and Cellco Partnership d/b/a Verizon*
                        *Wireless*